***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with RSKCo as the servicing agent.
3. The employee-employer relationship existed between the employee-plaintiff and employer-defendant on or about August 6, 2000.
4. The parties agreed by stipulation that these claims were consolidated for hearing and determination. I.C. File Number 137795 is assigned to the August 6, 2000 right wrist/hand claim. I.C. File Number 224506 is assigned to the May 2, 2000 right carpal tunnel claim.
5. The issues for determination are:
 a. Did plaintiff contract a compensable occupational disease, and if so, to what benefits is she entitled under the Act?
 b. Did plaintiff sustain an injury by accident arising out of and in the course of her employment on August 6, 2000, and if so, what are the compensable consequences?
6. The parties entered the following exhibits into the record at the hearing before the Deputy Commissioner:
a. Stipulated Exhibit 1 medical records, 176 pages,
 b. Stipulated Exhibit 2 record of hours and days worked, wage verification, job description, record of long term and short term disability payments,
c. Plaintiff's Exhibit 1 termination letter.
d. Plaintiff's Exhibit 2 recorded statement.
e. Plaintiff's Exhibit 3 March 29, 2000 termination.
f. Defendant's Exhibit 1 termination/exit report.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-three years old and had completed the tenth grade. She is right-hand dominant. Plaintiff had prior experience as a cashier and stocker at K-Mart.
2. On January 10, 2000, plaintiff began working as a part-time cashier with defendant's supermarket in Salisbury. Her duties included scanning and punching in codes for grocery and produce items at the cash register, lifting grocery items to be purchased from the carts, placing them on a conveyor and assisting to place the items in the bags for the customers. She worked twenty to twenty-five hours per week, normally from 7:00 a.m. to 3:00 p.m. or from 9:00 a.m. to 4:00 p.m. When there were no customers, plaintiff dusted the candy racks at the checkout counter, cleaned around her register area and wiped down the counter or conveyor. As with any retail grocery establishment, some days were busy while others were not.
3. As part of her job duties, the heaviest items to be lifted were cases of beverages and twenty-five to fifty-pound bags of dog food.
4. After working 15 weeks, plaintiff testified she began to notice her fingers on the right hand going to sleep. Her right hand would also wake her at night.
5. Between May 22, 2000 and November 28, 2000, plaintiff received short-term disability benefits through the employer-funded plan.
6. On May 31, 2000, plaintiff sought treatment with Dr. Christopher Nagy, who ordered nerve conduction studies. Dr. Nagy performed right carpal tunnel release surgery on July 3, 2000.
7. As a result of the carpal tunnel release surgery, Dr. Nagy authorized plaintiff to remain out of work from July 3, 2000 to July 31, 2000. He released her to return to regular duty as of July 31, 2000.
8. Although plaintiff returned to work on August 1, 2000 at regular duty, her employer offered to allow a coworker to assist with heavy lifting when possible.
9. On August 6, 2000, plaintiff was waiting on a male customer who had a large order. She asked for assistance with lifting the items, but no one was available, as the extra staff was outside collecting grocery carts from the parking lot. After lifting the second or third case of beverages, plaintiff felt a pop in her right wrist and her fingers began to swell.
10. Plaintiff testified she reported the incident and asked to go home but was not permitted to leave. This testimony is specifically rejected as not being credible.
11. On August 22, 2000, plaintiff returned to Dr. Nagy at which time she reported doing okay, but was having difficulty with lifting at work. Plaintiff did not report the incident which she alleges occurred on August 6, 2000, nor did she report any popping sensation or swelling to the doctor.
12. Dr. Nagy authorized plaintiff to remain out of work for two weeks. By September 13, 2000, Dr. Nagy ordered occupational therapy and continued her out of work.
13. On October 11, 2000, Dr. Nagy placed plaintiff in a short-arm cast to immobilize her wrist. He subsequently referred her to Dr. Jeffrey A. Baker for a second opinion.
14. On December 14, 2000, plaintiff reported to Dr. Baker she had developed right wrist pain with popping and clicking after lifting twelve cases of beer. Dr. Baker diagnosed her with a triangular fibrocartilage tear and a DC-type deformity of her lunate.
15. From December 2000 through the present, plaintiff received long-term disability benefits through an employer-funded plan.
16. Dr. Baker performed a right wrist arthroscopy on January 11, 2001, at which time he found a scapholunate tear with scarring over the ulnar aspect of the wrist and generalized synovitis.
17. On March 13, 2001, Dr. Baker released plaintiff to return to work for four hours per day for two weeks, with lifting restrictions.
18. On April 24, 2001, plaintiff returned to Dr. Baker, describing another work injury while lifting bottles of water. Dr. Baker applied a thumb spica cast. Plaintiff subsequently developed a CMC laxity which Dr. Baker casted. By January 31, 2002, Dr. Baker noted plaintiff had degenerative changes of the radiocarpal joint and may need a fusion in the future.
19. By June 27, 2002, Dr. Baker diagnosed plaintiff with a large disc herniation at C5-6 and C4-5. This condition is not a workers' compensation injury or claim. Dr. Baker performed a two-level anterior cervical fusion and diskectomy, and he felt the bulk of plaintiff's right upper extremity problems were due to the cervical disc herniation.
20. On May 5, 2001, plaintiff was terminated after she became belligerent and irate with manager Crystal Helms over the number of closing duties she was to perform. Ms. Helms asked plaintiff to go outside the store to cool off, and plaintiff returned and announced she was quitting. After plaintiff walked off the job without completing her shift, a termination report was generated.
19. At the hearing before the Deputy Commissioner Dollar, plaintiff testified she was fired after refusing to clean the top of a soft drink machine which was eight or nine feet tall. This testimony is specifically rejected as not being credible. The only drink coolers in the store are the small coolers with glass doors, which are located at the end or along the checkout aisles. These coolers are no more than four feet high and are in the area for customers to open the door to retrieve a bottled drink. However, the competent evidence in the record clearly establishes it was not the responsibility of the cashiers to clean these coolers.
20. Plaintiff worked 109 days for the employer from January 10, 2000 to May 2, 2000. During this time period, she worked 69.51 hours in January, 105.53 hours in February, 83.77 hours in March, and 77.66 hours in April. This would yield an average weekly wage of $158.83 for the 15.57 weeks worked and the $2,473.59 in total earnings.
21. Plaintiff's average weekly wage on August 6, 2000 was $168.48, based upon the total earnings of $2,718.70 for the 113 days worked.
22. Although Dr. Nagy initially felt it was possible plaintiff's work as a cashier could have been a contributing factor in the development of her right carpal tunnel syndrome, he changed his opinion when he was informed of her brief tenure with the employer and the short number of hours she worked. He later clarified it was merely a possibility and that it would be speculative for him to give an opinion regarding whether plaintiff's job placed her at an increased risk of developing carpal tunnel syndrome.
23. The greater weight of the medical evidence fails to support a finding that plaintiff's job duties for defendants caused or significantly contributed to the development of her carpal tunnel syndrome. The greater weight of the medical evidence does not support a finding that plaintiff's employment with defendants exposed her to an increased risk of developing this disease.
24. On August 6, 2000 plaintiff was performing her normal job duties of lifting cases of beverages. Plaintiff's job required her to lift grocery items, including heavy items such as cases of beverages and dog food. Plaintiff was engaged in her duties in her usual and customary manner, and there was no interruption of her normal work routine likely to result in unexpected consequences.
25. The greater weight of the medical evidence fails to show that plaintiff's wrist injury was causally related to her preexisting carpal tunnel syndrome.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff bears the burden of proving each element of compensability in order to prove the existence of an occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13). This requires the plaintiff to show that (1) the disease must be characteristic of a trade or occupation; (2) the disease must not be an ordinary disease of life to which the public is equally exposed outside of the employment; and (3) there must be proof of causation. Hansel v. Sherman Textiles, 304 N.C. 44,283 S.E.2d 101 (1981).
2. Expert opinion that rests on speculation and conjecture, or unproven facts, is not sufficiently reliable to qualify as competent evidence concerning the nature and cause of the injury.Young v. Hickory Bus. Furn., 353 N.C. 277, 538 S.E.2d 912 (2000). In the instant case, Dr. Nagy's opinion testimony was based on an inaccurate history related by plaintiff. After Dr. Nagy learned of plaintiff's brief tenure with the defendant-employer and the short number of hours she worked, he stated his opinion would be speculative as to whether plaintiff was at an increased risk of developing carpal tunnel syndrome based upon the facts of her employment. Therefore, his opinion is specifically rejected as not sufficiently reliable to qualify as competent evidence on the nature and cause of the injury.
3. In the instant case, plaintiff has failed to establish that her condition was characteristic of and peculiar to her employment, that she was at an increased risk of developing the condition due to her work, or that her condition was caused by the work. Hansel v. Sherman Textiles, 304 N.C. 44, 283 S.E.2d 101
(1981). Therefore, plaintiff did not contract a compensable occupational disease as the result of her employment with defendant.
4 The mere fact of injury does not of itself establish the fact of an accident. Key v. Woodcraft, Inc., 33 N.C. App. 310,235 S.E.2d 254 (1977). An injury which occurs under normal working conditions is not considered an accident arising out of the employment. Poe v. Acme Builders, 69 N.C. App. 147,316 S.E.2d 338, cert. denied, 311 N.C. 762, 321 S.E.2d 143 (1984). The term "accident" as used in the Act has been defined as (1) an unlooked for and untoward event which is not expected or designed by the injured employee; (2) a result produced by a fortuitous cause.Harding v. Thomas Howard Co., 256 N.C. 427, 124 S.E.2d 109
(1962). The incident of which plaintiff testified on August 6, 2000, even if accepted as credible, does not establish she sustained an injury by accident within the meaning of the Act.See, Landry v. US Airways, 356 N.C. 419, 571 S.E.2d 586,reversing 150 N.C. App. 121, 563 S.E.2d 23 (2002).
5. On August 6, 2000 plaintiff did not sustain an injury by accident arising out of and in the course of her employment. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for right carpal tunnel syndrome under I.C. 224506 is, and under the law must be, DENIED.
2. Plaintiff's alleged injury by accident claim under I.C. 137795 is, and under the law must be, DENIED.
3. Each side shall pay its own costs.
This the 30th day of August 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ PAMELA T. YOUNG COMMISSIONER
LKM/mb